[Cite as *Huntington Natl. Bank, N.A. v. Sussex Group, Ltd.*, 2011-Ohio-4571.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| HUNTINGTON NATIONAL BANK, N.A. | JUDGES: |
| | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| | Hon. Patricia A. Delaney, J. |
| -vs- | |
| THE SUSSEX GROUP, LTD., ET AL | Case No. 2010CA00280 |
| Defendants-Appellees | O P I N I O N |

CHARACTER OF PROCEEDING:  Appeal from the Stark County Court of
Common Pleas, Case No. 2010CV00327

JUDGMENT:      AFFIRMED

DATE OF JUDGMENT ENTRY:  September 6, 2011

APPEARANCES:

For Plaintiff-Appellant      For Defendant-Appellees

JOHN A. MURPHY, JR.      JAMES M. MCHUGH
ROBERT E. ROLAND      LEONIDAS E. PLAKAS
ALEX J. MCCALLION      220 Market Avenue South
Millennium Centre-Suite 300   8th Floor
200 Market Avenue South    Canton, OH 44702
P. O. Box 24213
Canton, OH 44701-4213

*Delaney, J.*

{¶1}    Plaintiff-Appellant Huntington National Bank, N.A. appeals the September 24, 2010 judgment entry of the Stark County Court of Common Pleas.  Defendants-Appellees are Sussex Group, Ltd., Nexgen Partnership, PPL, and The Schneider Lumber Company.

## FACTUAL AND PROCEDURAL BACKGROUND

{¶2}    On May 2, 2002, Defendant-Appellee, Sussex Group, Ltd. entered into a commercial loan arrangement with Unizan Bank (now known as Huntington National Bank, N.A.).  The commercial loan originated under the following circumstances. Donald Schneider was the president of Defendant-Appellee, The Schneider Lumber Company.  Schneider was also the past board president of Unizan Bank.  In 2002, Donald Schneider was no longer a member of the board, but Schneider's son, Mark Schneider, was a member of the Unizan Bank board of directors.

{¶3}    Schneider Lumber wished to obtain commercial loan financing from Unizan Bank for a line of credit and a construction loan.  If Unizan Bank granted Schneider Lumber a commercial loan, the loan would come under the scrutiny of Regulation O because of the Schneider family's presence on the Unizan Bank board of directors.  Regulation O is a federal regulation that regulates insider loan transactions. In order to work around Regulation O, Donald Schneider formed the Sussex Group, Ltd. The arrangement was such that Unizan Bank loaned the funds to Sussex and Sussex in turn loaned the funds to Schneider Lumber.

{¶4} The commercial line of credit was accomplished as follows. On May 2, 2002, Unizan Bank extended a $2.5 million line of credit to Sussex. In order to secure the $2.5 million Note, Sussex provided as collateral:

{¶5} (1) Sussex assigned to Unizan Bank a promissory note from Schneider Lumber to Sussex in the amount of $2.5 million ("Schneider Lumber-Sussex Promissory Note"). The promissory note from Schneider Lumber to Sussex was secured by two mortgages on two parcels of property: (a) The first mortgage was on 0.963 acres of property owned by Schneider Lumber ("Schneider-Sussex Mortgage") and (b) the second mortgage was on 3.756 acres of property owned by Defendant-Appellee, Nexgen Partnership, PPL ("Nexgen-Sussex Mortgage"). Nexgen is owned by Donald Schneider's two sons;

{¶6} (2) Sussex assigned the Schneider-Sussex mortgage to Unizan Bank;

{¶7} (3) A commercial guaranty by Donald Schneider;

{¶8} (4) A commercial pledge agreement by Donald Schneider;

{¶9} (5) A commercial pledge agreement by Sussex; and

{¶10} (6) Unizan Bank stocks owned by Donald Schneider.

{¶11} The parties do not dispute that Sussex did not assign the Nexgen-Sussex Mortgage to Unizan Bank.

{¶12} Also on May 2, 2002, Unizan Bank and Nexgen entered into a commercial loan for $2.1 million. The construction loan was secured by a mortgage on the Nexgen property. A building, owned by Nexgen, was built on the 0.963 acres of property owned by Schneider Lumber and 3.756 acres of property owned by Nexgen. The construction loan is not at issue in the present case.

{¶13} During the pendency of the loan, Unizan Bank was purchased by Huntington Bank.  On October 5, 2006, Huntington Bank and Sussex entered into a replacement promissory note in the amount of $2,790,000.  The replacement note does not reference the Nexgen-Sussex Mortgage.

{¶14} Schneider Lumber experienced financial difficulties.  On January 25, 2010, Huntington obtained judgment on two promissory demand notes.  In order to enforce the notes, Huntington Bank filed a Complaint for Foreclosure against Schneider Lumber, Sussex, and Nexgen.

{¶15} The matter proceeded to summary judgment.  The trial court granted Huntington Bank's motion for summary judgment to foreclosure on the 0.963 acre parcel of land owned by Schneider Lumber as assigned to Huntington Bank through the Schneider Lumber-Sussex Mortgage.  The trial court denied judgment as a matter of law on the issue of whether Huntington Bank could foreclose on the 3.756 acre parcel of land owned by Nexgen and subject to the Nexgen-Sussex Mortgage.

{¶16} The trial court held a bench trial on September 10, 2010.  The issue at trial was whether Huntington Bank could foreclose on the Nexgen-Sussex Mortgage when it was not formally assigned to Huntington Bank.  By judgment entry issued September 24, 2010, the trial court determined there was no documentary or testimonial evidence to show the Nexgen-Sussex Mortgage was intended to collateralize the commercial line of credit or be assigned to Huntington Bank to secure the commercial line of credit.

{¶17} It is from this judgment Huntington Bank now appeals.

{¶18} Appellant raises one Assignment of Error:

{¶19} "I. THE TRIAL COURT ERRED IN HOLDING THAT THE NEXGEN MORTGAGE IS NOT PART OF THE HUNTINGTON COLLATERAL AND HUNTINGTON CANNOT FORECLOSE ON THE NEXGEN MORTGAGE.

**I.**

{¶20} The trial court succinctly stated the issue before us in its September 24, 2010 judgment entry: whether Huntington Bank can foreclose on the Nexgen-Sussex Mortgage that was not formally assigned to Huntington Bank. The trial court determined based on the law and evidence presented at trial, the Nexgen-Sussex Mortgage was never intended to be part of the loan collateral. We agree with the trial court's conclusion based on the record presented and applicable law.

{¶21} An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. *C.E. Morris Co. Foley Construction* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. "A reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate conclusions." *Hooten Equipment Co. v. Trimat, Inc.,* 4th Dist. No. 03CA16, 2004–Ohio–1128, ¶ 7. We are to defer to the findings of the trier of fact because in a bench trial the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the testimony. *Seasons Coal Company, Inc. v. City of Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We may not substitute our judgment for

that of the trier of fact. *Pons v. Ohio State Medical Board* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748, 621.

{¶22}  Directly at issue in this case is Sussex's assignment of the Schneider Lumber-Sussex Promissory Note to Huntington Bank.  The Schneider Lumber-Sussex Promissory Note is secured by the Schneider Lumber-Sussex Mortgage and the Nexgen-Sussex Mortgage.  Sussex specifically assigned the Schneider Lumber-Sussex Mortgage to Huntington Bank.

{¶23}  Huntington Bank argues that while there was no formal assignment of the Nexgen-Sussex Mortgage to Huntington Bank, because the Nexgen-Sussex Mortgage is security for the Schneider Lumber-Sussex Promissory Note, the Nexgen-Sussex Mortgage was assigned to Huntington Bank with the Schneider Lumber-Sussex Promissory Note.  Therefore, Huntington Bank may foreclose on the Schneider Lumber-Sussex Mortgage and the Nexgen-Sussex Mortgage.  Huntington Bank argues that it is well-settled law that the transfer of the note implies the transfer of the mortgage.  In *Lasalle Bank National Association v. Street,* 5th Dist. No. 08CA60, 2009-Ohio-1855, this Court stated:

{¶24}  "Where a note secured by a mortgage is transferred so as to vest the legal title to the note in the transferee, such transfer operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered. *Kuck v. Sommers* (1950), 59 Ohio Law Abs. 400, 100 N.E.2d 68, 75."

{¶25}  Appellees do not disagree with Huntington Bank's statement of law, but differentiate the present case from a typical foreclosure case where the borrower's mortgage and note have been purchased from the original lender and the mortgage

failed to transfer with the note, raising the issue of whether the foreclosing secondary mortgagee is the real party in interest. In this case, the original lender, Huntington Bank is in possession of the Schneider Lumber-Sussex Promissory Note and the Schneider Lumber-Sussex Mortgage.

{¶26} Appellees state that the circumstances of this case require us to examine the law beyond the equitable assignment of mortgages. Appellees refer this Court to *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, where we examined the Restatement on Property:

{¶27} "Section 5.4 of the Restatement III, Property (Mortgages) discusses transfers of the obligations secured by a mortgage and transfers of the mortgage itself by the original mortgagee to a successor, or a chain of successors. Such transfers occur in what is commonly termed the 'secondary mortgage market', as distinct from the 'primary mortgage market' in which the mortgage loans are originated by lenders and executed by borrowers.

{¶28} "The Restatement asserts as its essential premise is that it is nearly always sensible to keep the mortgage and the right of enforcement of the obligation it secures in the hands of the same party. This is because in a practical sense separating the mortgage from the underlying obligation destroys the efficacy of the mortgage, and the note becomes unsecured. The Restatement concedes on rare occasions a mortgagee will disassociate the obligation from the mortgage, but courts should reach this result only upon evidence that the parties to the transfer agreed. Far more commonly, the intent is to keep the rights combined, and ideally the parties would do so explicitly. The Restatement suggests that with fair frequency mortgagees fail to

document their transfers so carefully. Thus, the Restatement proposes that transfer of the obligation also transfers the mortgage and vice versa. Section 5.4(b) suggests 'Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.' Thus, the obligation follows the mortgage if the record indicates the parties so intended." Id. at ¶27-28.

{¶29} Appellees argue that because this mortgage and note occurred on the primary market, strict application of the rule of law for equitable assignment does not apply to this case and we should rather look to the parties' intent as proposed by the Restatement to determine whether the parties intended the Nexgen-Sussex Mortgage to secure the commercial line of credit. A review of the trial transcript shows that Huntington Bank proceeded at trial to demonstrate that while a formal assignment did not occur, an equitable assignment of the Nexgen-Sussex Mortgage occurred based on the transactions between the parties and the intent of the parties. We therefore review the record under the theory of law that we look to the intent of the parties to discern whether the Nexgen-Sussex Mortgage was also collateral for the commercial line of credit.

{¶30} As the trial court noted, the documentary evidence presented by Huntington Bank in this case failed to make any reference to the 3.756 acre parcel of Nexgen property. The documents consistently refer to Schneider Lumber, but not to Nexgen. Further, on the date the loan transaction occurred, there was a specific assignment of the Schneider Lumber-Sussex Mortgage to Huntington Bank. There was not an assignment of the Nexgen-Sussex Mortgage to Huntington Bank.

{¶31} The testimony at trial illuminates the reasons why the Nexgen-Sussex Mortgage was not assigned to Huntington Bank or intended to be collateral for the commercial loan. Donald Schneider, president of Schneider Lumber, was the only individual with first-hand knowledge of the loan transaction to testify at trial. Donald Schneider testified that the Nexgen property was deliberately kept out of the transaction because his sons owned Nexgen. (T. 112). Nexgen's assets were not part of the loan transaction because they were his sons' assets and Donald Schneider provided sufficient collateral for the loan through Schneider Lumber and his own personal assets, such as over $4 million in Unizan Bank stock. (T. 113, 115). Donald Schneider consistently asserted that the Nexgen property was not provided as collateral for the commercial line of credit.

{¶32} The only witness to testify on behalf of Huntington Bank was Donald Wechter, a Huntington Bank employee within the commercial lending department. Wechter was not an employee of Unizan Bank when the loan transaction was negotiated and did not have first-hand knowledge of the loan transaction. (T. 66). Wechter was with Huntington Bank when the renewal of the promissory note occurred in 2006 and was a team member on the approval process, but was not part of the negotiation process. (T. 67). Wechter reviewed the loan documents to determine whether the Nexgen-Sussex Mortgage was intended to be collateral for the commercial line of credit. Wechter admitted that the loan documentation contained no reference to the Nexgen-Sussex Mortgage. (T. 68-73).

{¶33} The trial court reviewed the documentary and testimonial evidence before it, based on the rule of law stated above, and found the evidence showed it was not the

intent of the parties to include the Nexgen property as collateral for the commercial line of credit. Based on our review of the evidence and our deference to the trial court's consideration of the witnesses' testimony, we find the trial court's decision is supported by competent, credible evidence.

{¶34} Huntington Bank's sole Assignment of Error is overruled.

{¶35} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Delaney, J.

Gwin, P.J. and

Wise, J. concur.

HON. PATRICIA A. DELANEY

HON. W. SCOTT GWIN

HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

HUNTINGTON NATIONAL BANK, N.A.    :

      :

    Plaintiff-Appellant      :

      :

-vs-      :      JUDGMENT ENTRY

      :

THE SUSSEX GROUP, LTD., ET AL    :

      :

    Defendants-Appellees      :      Case No. 2010CA00280

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

Costs to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE